NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| WILLIAM MERRELL, | Civil Action No. 2:12-cv-908 (SDW) |
| Plaintiff, | |
| v. | |
| | **OPINION** |
| WEEKS MARINE, INC., | |
| Defendant. | September 16, 2015 |

**WIGENTON,** District Judge.

Before the Court is Weeks Marine, Inc.'s ("Weeks Marine" or "Defendant") Motion for Summary Judgment ("Motion") pursuant to Federal Rule of Civil Procedure 56(c). This Court has jurisdiction pursuant to 46 U.S.C. § 30104 and 28 U.S.C. § 1333. This motion is decided without oral argument as permitted under Federal Rule of Civil Procedure 78. For the reasons stated below, this Court **GRANTS** Defendant's Motion.

### I.     FACTUAL AND PROCEDURAL HISTORY

Defendant is a foreign corporation licensed to conduct business in New York. (Am. Compl. ¶ 1.) Defendant employed William Merrell ("Plaintiff") as a safety manager in its

1

construction division. (Plaintiff's Local Rule 56.1 Statement of Undisputed Material Facts ("Pl.'s SUMF") ¶ 1.)[1]

During the course of its construction projects, Defendant uses crane barges, material barges, and supporting vessels, such as tugboats and crew boats. (Pl.'s SUMF ¶ 2.) Throughout his employment, Plaintiff oversaw two major marine construction projects on land and aboard vessels: the Norfolk Naval Shipyard Project ("Pier 3") and the Virginia Natural Gas Project ("VNG"). (Id. ¶ 1.) Plaintiff performed weekly safety inspections of each jobsite and of various vessels. (Id. ¶ 3(a).) Plaintiff also conducted daily safety inspections for approximately twenty minutes to several hours by walking around barges, cranes, and other equipment. (Id. ¶ 3(b).) In addition, Plaintiff was responsible for separate yearly equipment inspections, which involved inspecting ten to fifteen cranes each year. Seventy percent of the cranes were on barges. (Pl.'s SUMF ¶ 3(e).) Each inspection took approximately three hours to a full work day. (Id.)

Although Plaintiff performed inspections almost every day, he admits that daily inspections did not always involve going aboard the barges. (Betancourt Dec., Ex. C, Pl. Dep. at 60:20-62-14; Pl.'s SUMF ¶ 3 (b); Defendant's Response to Pl.'s SUMF ("Def.'s Resp.") ¶ 3(b); Betancourt Dec., Ex. C, Pl. Dep. at 55:4-57:8.) While another safety inspector, Lourie Pruitt, was primarily responsible for inspections at the VNG project, Plaintiff participated in about half of the inspections and was responsible for employee safety training at VNG. (Pl.'s SUMF ¶ 3(b).) Employee safety trainings were held at weekly safety meetings conducted in the job site trailer offices. (Betancourt Dec., Ex. C, Pl. Dep. at 91:20-96:16.)

Plaintiff testified that he spent forty to forty-five percent of his work time aboard Weeks Marine's vessels, but Defendant disputes that the record supports such an estimate, especially in

---

[1] The length of Plaintiff's employment is not specified in the record.

2

light of the fact that the first portion of the VNG project was performed on land without the use of barges. (Pl.'s SUMF ¶ 4; Def.'s Resp. ¶ 4.) Defendant asserts that the bulk of Plaintiff's time was spent promulgating safety rules, creating safety plans for each project, and crafting safety manuals for land-based projects and vessels. (Def.'s Resp., ¶ 4, 8; Pl.'s SUMF ¶ 5.) In support, Defendant points to Plaintiff's daily Employee Time Sheets, which show that Plaintiff spent entire days at a time at his assigned land-based office in Portsmouth, Virginia. (Def.'s Resp. ¶ 3.)

In the late summer or early fall of 2008, Weeks Marine brought Barge 271 into the construction area of its Portsmouth yard. (Pl.'s SUMF ¶ 7.) Barge 271 was to be used for directional drilling and installation of pipes under the James River as part of the VNG project and had to be refitted for that purpose. (Id.) Refitting is a process by which wood matting is placed over a portion of the deck to facilitate crane operation. (Id. ¶ 9.) One to two days before Plaintiff's injury occurred, the refitted Barge 271 was moved from Portsmouth to the middle of the James River, and was reachable only by boat. (Id. ¶¶ 6-10.)

On the day of the injury, October 21, 2008, Plaintiff conducted a safety meeting aboard Barge 271. (Pl.'s SUMF ¶ 11.) As part of the refitting of Barge 271, wood matting had been placed over a portion of the deck of the barge; plywood was then placed over the matting to secure footing in some areas where the matting was worn or deteriorated. (Id. at ¶ 8.) Plaintiff alleges that while he was giving his presentation at the crew safety meeting, the crane on the barge started up unexpectedly and that as he was attempting to move away from the swing radius of the crane, he fell in a crevice in the wood matting and injured himself. (Id. ¶ 12.) Defendant disputes that the crane was suddenly turned on during Plaintiff's presentation but admits that there was no plywood on the wood matting in the area where Plaintiff fell. (Def.'s Resp., ¶¶ 12-13.) Less than a month later, Dan Mowers, a Weeks Marine employee, testified that Merrell's fall occurred

3

because the "corners of the wood mats had been naturally stripped away creating a depression." (Id. ¶ 14.) Mowers did not corroborate Plaintiff's contention that he was attempting to avoid being struck by the barge crane when he fell. (Id.)

On October 8, 2013, Plaintiff filed an Amended Complaint against Weeks Marine. (Dkt. No. 51.) Plaintiff alleges: a violation of the Jones Act, 46 U.S.C. § 30104 ("Count IV"); unseaworthiness ("Count V"); maintenance and cure ("Count VI"); a violation of the Longshore Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. § 901 *et. seq.* ("Count VII"); and a plea for damages ("Count VIII") and interest ("Count IX"). (Id. at 4-7.)[2]

On March 30, 2015, Defendant filed the instant Motion for Summary Judgment, which Plaintiff timely opposed. (Dkt. Nos. 80 and 87.)

## II.  LEGAL STANDARD

"[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (quoting Fed. R. Civ. P. 56(c)). In deciding a motion for summary judgment, the Court must construe the facts and inferences in a light most favorable to the non-moving party. *Pollock v. Am. Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986).

"'With respect to an issue on which the non-moving party bears the burden of proof, the burden on the moving party may be discharged by 'showing'–that is, pointing out to the district

---

[2] Counts I-III of the original Complaint were omitted from the Amended Complaint and are deemed to have been voluntarily dismissed. See Fed. R. Civ. P. 15(a). Plaintiff did not renumber the counts in his Amended Complaint. To avoid confusion, this Court will refer to the counts by the numbers ascribed to them in the Amended Complaint.

4

court–that there is an absence of evidence to support the nonmoving party's case.'" *Conoshenti v. Public Serv. Elec. & Gas*, 364 F.3d 135, 145-46 (3d Cir. 2004) (quoting *Celotex*, 477 U.S. at 325). The role of the Court is not "to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

### III. ANALYSIS

#### a. Seaman Status

Determining seaman status "is a mixed question of law and fact," in which the trier of fact must decide whether the party is a seaman. *Chandris, Inc. v. Latsis*, 515 U.S. 347, 369 (1995). "When the underlying facts are established, and the rule of law is undisputed, the issue is whether the facts meet the statutory standard." *McDermott Int'l, Inc. v. Wilander,* 498 U.S. 337, 356 (1991). The terms "member of the crew" and "seaman" are statutory terms, whose interpretation is a question of law. *Id*. Seaman status is based on whether the alleged seaman had "a 'more or less permanent connection' with the vessel on which he was injured" or performed "substantial work on the vessel sufficient for seaman status." *Chandris*, 515 U.S. at 365.

To qualify as a seaman under the Jones Act, 46 U.S.C. § 30104, Plaintiff must satisfy two requirements. *See McDermott*, 498 U.S. 337; *Harbor Tug and Barge Co. v. Papai*, 520 U.S. 548 (1997); *Reeves v. Mobile Dredging & Pumping Co.*, 26 F. 3d 1247 (3d Cir. 1994). First, the seaman's duties must "contribute to the function[ing] of the vessel or to the accomplishment of its mission." *Chandris,* 515 U.S. at 347. Second, his connection to the "vessel in navigation" must be "substantial in its duration and its nature." *Id.*

Regarding the first prong of the test, the Fifth Circuit has held that a crane installer did not contribute to the functioning of a vessel used to transport the plaintiff to the offshore platform for work, even though the plaintiff attended meetings, slept, and ate on the vessel. *See Teaver v. Seatrax of La., Inc.*, 434 F. App'x 307 (5th Cir. 2011) (holding that a seaman's job responsibilities relate to the maintenance, custody, or operation of vessels). Similarly, in *Encarnacion v. BP Exploration and Production, Inc.*, the Court granted summary judgment against Defendant's former employee who was allegedly injured during a daily safety meeting held aboard Defendant's shipping vessel, finding that although Plaintiff ate, slept, and attended daily safety meetings aboard the vessel, he did not qualify as a seaman under the Jones Act because none of his actions contributed to the vessel's mission. 2013 U.S. Dist. LEXIS 34062 (E.D. La. Mar. 12, 2013).

As in *Teaver* and *Encarnacion*, Plaintiff's job duties did not contribute to the vessel's function or mission. The mission of the vessel at issue, Weeks' Barge 271, was to serve as a work platform from which construction workers performed their construction duties. (Pl.'s SUMF, ¶ 35.) The purpose of Plaintiff's employment was to implement and enforce Defendant's safety policies. (Pl.'s SUMF, ¶¶ 18-32, 56.) Plaintiff's specific duties included creating safety plans, manuals, and rules, inspecting the vessels, inspecting the cranes, providing safety training to the vessel's crew, investigating safety violations and accidents. *Id.* As such, Plaintiff's work did not relate to the navigation, maintenance, or voyage of the vessel.

Plaintiff contends that his job duties were integral to the vessel's mission because it was his duty to maintain safe work conditions which would prevent injury to crew members and damage to the barge, thereby minimizing the potential for unnecessary work stoppage or delay. In essence, Plaintiff views his contribution to the safe functioning of the barge, though not directly related to the day-to day operation of the barge, as sufficiently essential to qualify him for seaman

status under the Jones Act. While Plaintiff's safety assurance role cannot be discounted, it is nonetheless a tangential role that falls short of entitling him to seaman status. *See Johnnie v. Mama Development Corp.*, 780 F. Supp. 669, 671 (1991) (finding that the duties performed by plaintiff, who served as a cook for the workers on a vessel used to house oil spill workers, and ate, and slept aboard the vessel, was related to the feeding of the workers and was completely unconnected to the vessel's mission.) Plaintiff's duties related to the implementation of safety measures crafted to protect the workers who actually performed the vessel's function—construction work. As such, Plaintiff has failed to meet the first requirement for seaman status.

The second prong of the "seaman" status test under the Jones Act requires the worker's connection to the "vessel in navigation" to be "substantial in its duration and its nature." *Chandris*, 515 U.S. at 370; *see also McDermott*, 498 U.S. 337 (determining that it is unnecessary for a seaman to aid in navigation or contribute to the transportation of the vessel but that a "seaman must be doing the ship's work.") In *Chandris*, the Fifth Circuit devised the so-called "30 percent rule," which dictates that a "worker who spends less than about 30 percent of his time in the service of a vessel in navigation should not qualify as a seaman under the Jones Act." 515 U.S. at 371. Also, the Supreme Court has held that seamen are those who face regular exposure to the perils of the sea. *Harbor Tug and Barge Co.,* 520 U.S. at 560.

There is no genuine issue of material fact as to the second element of the test. First, Plaintiff's assertion that he worked an estimated forty to forty-five percent of the time aboard Defendant's vessels has not been demonstrated in the record. *See Chandris*, 515 U.S. at 367. The record shows that Plaintiff spent less than thirty percent of his time aboard Defendant's vessels,

ventured aboard them only while they were docked,[3] and never went to sea. (Pl.'s SUMF, ¶¶ 34, 37-39, 44, 48, 62-63); *see Dize v. Ass'n of Maryland Pilots*, 77 A.3d 1016, 1028 (Md. 2013), cert. denied, 135 S.Ct. 56 (2014) (holding that time spent while docked or onshore does not count toward the 30 percent threshold). Second, Plaintiff's job responsibilities, which related to construction site safety inspections, did not relate to the operation or maintenance of Defendant's barges. (Id. ¶¶ 8-33, 36.) Third, Plaintiff does not dispute that he has never been exposed to the perils of the sea or the hazards and disadvantages faced by seamen. (Id. ¶¶ 8-33, 58-63.) Fourth, Plaintiff's responsibilities consisted of drafting, implementing, and reporting on corporate policy—tasks which were performed on land, often from home, and under the supervision of land-based managers. (Id. ¶¶ 7, 11-33, 23, 63.) In light of the foregoing, Plaintiff does not qualify as a seaman under the Jones Act as his job duties are more consistent with the duties of a land-based corporate officer than with those of a seaman. *Chandris*, 515 U.S. at 368 (holding that land-based workers are not seamen merely because they are injured while aboard a ship).

As such, Count V of the complaint is dismissed. Counts V and VI of Plaintiff's complaint, unseaworthiness and maintenance and cure, are similarly dismissed because those causes of action are available only to plaintiffs who qualify as Jones Act seamen. *Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199, 208 n.6 (1996).

### b. *Longshore and Harbor Workers' Compensation Act*

Plaintiff argues that even if this Court finds him ineligible for seaman status, he is nonetheless entitled to recover damages from Weeks under the Longshore and Harbor Workers'

---

[3] Plaintiff has only been aboard Barge 271 on one occasion when it was in the James River. Although not docked, the barge was spudded down to the riverbed and fixed in position. (Pl.'s SUMF, ¶ 48.)

Compensation Act. Congress passed the Longshore and Harbor Workers' Compensation Act ("LHWCA"), codified at 33 U.S.C. § 905, to provide remedy to land-based maritime workers.[4] *Foulk v. Donjon Marine Co.*, 144 F.3d 252, 257 (3d Cir. 1998). Under the LHWCA, liability for an injury "caused by the negligence of a vessel" accrues against the vessel and not against an employer. 33 U.S.C. § 905(b); *see also Gravatt v. City of New York*, 226 F.3d 108, 117 (2d Cir. 2000) ("[M]aritime workers engaged directly by a vessel owner to provide shipbuilding, repairing or breaking services cannot sue the dual-capacity employer for injuries caused by the negligence of the vessel.").

Section 905(b) of the LHWCA allows an injured maritime worker who does not qualify as a "seaman" under the Jones Act to bring a claim against the vessel on which he was injured even though the owner of the vessel is also his employer. *See* 33 U.S.C. § 905(b). Therefore, in order to find Plaintiff eligible for recovery under LHWCA, this Court must first determine whether Defendant was acting as an employer or as a vessel owner at the time the allegedly negligent act, the refitting of Barge 271, occurred.

Plaintiff contends that he is entitled to recovery under Section 905(b) of the LHWCA because his injury resulted from Weeks' negligence as a vessel owner. Plaintiff's contention rests on the following two facts: 1) the crew that refitted the barge was not involved in marine construction and was not expected to participate in the construction work for which Barge 271 was being refitted; 2) the injury occurred after Barge 271 was moved to the James River but before it was actually engaged in the construction work. *See* Pl.'s Br. p. 29.

---

[4] The Jones Act and the LHWCA are mutually exclusive. The Jones Act covers "a master or member of a crew of any vessel" or, in other words, a seaman, while the LHWCA specifically excludes seamen from its purview. *See Foulk*, 144 F. 3d at 258 (quoting 33 U.S.C. § 902(3)(G)).

9

Plaintiff's argument is misplaced in that it treats the barge refitting project completed by Weeks Marine's Construction Division as work performed by a vessel owner. Weeks Marine's Construction Division is staffed with construction personnel who prepare barges for Weeks Marine's construction work. In this instance, the Construction Division crew placed matting upon the deck of Barge 271 to facilitate the operation of a crane to be used in the VNG project on the James River. (Pl.'s SUMF ¶¶ 39-40, 43.) Their work, thus, is incident to Week's construction project on the James River—where Weeks Marine operates as an employer.

Plaintiff also argues that the open and obvious nature of the condition of the matting should not bar his recovery where, as here, in his view, the circumstances made safer alternatives unduly impractical or time consuming. In support, he relies on Hill v. Reederei F. Laeisz G.M.B.H., 435 F.3d 404 (3d Cir. 2006). First, this Court notes that the Third Circuit's analysis in Hill applies in circumstances where a stevedore employee[5] sues a vessel owner for turning the vessel over in an unsafe condition. As discussed herein, Weeks Marine was acting in its capacity as an employer, not a vessel owner, at the time that Barge 271 was allegedly negligently refitted.

Nonetheless, there is no factual support for Plaintiff's contention that it would have been unduly impractical for him to avoid his injury. It is undisputed that Plaintiff was aware of the poor condition of the matting and that, during the safety meeting, he warned the construction crew to avoid and/or exercise caution when traversing the affected areas. Furthermore, despite Plaintiff's knowledge of the hazardous condition of the matting, he chose to stand on the matting during the safety meeting while others stood on the deck of the barge. It would strain logic to conclude that Plaintiff, like everyone else at the meeting, could not have simply avoided standing on the matting.

---

[5] Stevedoring companies contract with shipowners to load and unload vessels.

Because Weeks was acting in its capacity as an employer as the time that Plaintiff was injured and Plaintiff could have quickly and reasonably avoided the open and obvious dangerous condition that caused his injury, Weeks is entitled to summary judgment on Plaintiff's LHWCA claim.

### IV.  CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is **GRANTED**. An appropriate order will be filed with this opinion.

s/ <i>Susan D. Wigenton</i><br>
<b>SUSAN D. WIGENTON</b><br>
<b>UNITED STATES DISTRICT JUDGE</b>

Orig:  Clerk
cc:    Magistrate Judge Steven C. Mannion